# White *versus* Ballantine.

1. The Act of February 24th 1871 was passed for the protection of municipal claims. They are a charge against the property alone, and the proceedings on them are not personal but *in rem*.

2. The Act of 1871 is a valuable one and should be enforced according to its intent and purpose. By it ample provision is made whereby the property owner may protect himself, and if he neglects to do so it is at his own peril.

3. Emrick *v.* Dicken, 11 Norris 78, followed.

November 9th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas, No. 2, of *Allegheny county :* Of October and November Term 1880, No. 184.

Ejectment by E. C. White against James W. Ballantine.

E. C. White, the plaintiff, was the owner of three lots of ground situate in Temperanceville, now Thirty-sixth ward, city of Pittsburgh. On or about the 1st of April 1855, he and his wife conveyed them to one Nathaniel Ballantine, by deed absolute upon its face, but accompanied by a parol defeasance, which made it a mort-

[White *v.* Ballantine.]

gage for the security of money loaned or to be advanced by Ballantine to White to an amount not exceeding $2000. The parol defeasance stipulated that Ballantine should have possession of the property, collect the rents thereof until reimbursed, and then to reconvey to White. In pursuance of this agreement, Ballantine took possession and received the rents until 1867. White, at that time, alleged that Ballantine was fully reimbursed, and demanded a reconveyance according to agreement. Ballantine then denied the parol defeasance, claimed his deed to be an absolute purchase, and refused to reconvey. On the 25th of March 1867, White brought ejectment to No. 371, April Term 1867, to enforce the parol agreement and recover possession. This suit was tried on the 2d of December 1872, and resulted in a verdict for White. Ballantine removed it to this court, when the judgment of the court below was affirmed on the 9th of November 1874. (See case reported in 27 P. F. Smith 20.)

On the 16th of June 1873, White conveyed to J. W. Donaldson, Esq. Afterwards, on the 6th of April 1875, Donaldson reconveyed the property back to White. The deeds were duly recorded in the recorder's office. The deed of Donaldson to White was also registered in the City Registry office, on the 26th of May 1875, as required by the Act of 24th February 1871. On the 4th of May 1875, Ballantine brought another action of ejectment against White and Donaldson, to No. 1010 of June Term 1875, for the same property, alleging that the judgment in the former ejectment was not conclusive. This action was tried in the court below on the 20th of April 1876, and also resulted in a verdict for White. Ballantine took this case to the Supreme Court likewise, and on the 23d of October 1876, the judgment of the lower court was affirmed.

On the 2d of April 1872, Temperanceville was consolidated with the city of Pittsburgh, and made part thereof by special act of that date. In the summer of 1873, Main and Walnut streets, which bounded two sides of this property, were graded and paved by the city. For this improvement the property was assessed by the city with the sum of $1068.96. To secure the payment of this assessment, the city filed a municipal lien on the 30th day of January 1874, to No. 2, of April Term 1874, for the said sum of $1068.96, with interest from the 1st of August 1873. The said Nathaniel Ballantine, being in possession during the making of the improvements, and at the time the lien was entered, it was filed against him as defendant. Afterwards a scire facias by the city as plaintiff was issued against the said Ballantine as defendant to No. 2 of April Term 1874. And, on the 8th of July following, judgment was entered against the defendant for the sum of $1127.75. On this judgment a levari facias was afterwards issued, and the property was sold by the sheriff on the 5th day of January 1877, and

purchased by James W. Ballantine, the defendant in error, and son of said Nathaniel. The sheriff, in pursuance of said sale, executed and delivered to him a deed. White then surrendered possession and afterwards brought this action of ejectment against the said J. W. Ballantine to No. 469 of April Term 1878. Issue was joined and the case was tried on the 4th of June 1880, which, under peremptory instruction by the court, resulted in a verdict for the defendant.

The case turned upon a question of law, which involved the construction of the 20th section of the Act of 6th of January 1864, entitled, " An act concerning streets and sewers in the city of Pittsburgh," Pamph. L. 1864, sect. 20, p. 1131. And the 8th section of the Act of 24th of February 1871, entitled, " An act providing for the registry of lots in the city of Pittsburgh," Pamph. L. 1871, sect. 1, p. 126.

The 20th section of the Act of 1864 provides, " that a sale upon a levari facias shall convey only the interests of those who are defendants in the writ."

The lien in this case was entered against Nathaniel Ballantine alone ; the scire facias was issued against and served upon him alone as defendant ; the judgment was entered against him alone as defendant ; the levari facias was issued against him alone as defendant, and the property was sold by virtue thereof as his property. In view of this record evidence, and the 20th section of the above recited acts, plaintiff's counsel asked the court, in their second point, to charge that the sheriff's sale of the property in dispute in this action conveyed only the estate or interest therein of the said Nathaniel Ballantine, the defendant in the writ.

This prayer was refused, and the refusal thereof is the first error complained of.

Plaintiff's counsel, in their third point, requested the court to further charge that at the date of the aforesaid sheriff's sale, to wit : January 5th 1877, N. Ballantine, the defendant in the writ, had no interest or estate in the property, and that J. W. Ballantine, the purchaser at said sheriff's sale, took no title by virtue of his purchase. .

This point was also declined, and the refusal thereof is the second error complained of.

Plaintiff's counsel, in their fifth point, requested the court to further charge, that under and in view of the deeds and records in evidence, the sheriff's sale of the property on the execution against N. Ballantine did not divest the plaintiff's title acquired by virtue of the final judgments in his favor in the two actions of ejectment above recited. This request was also refused, and its refusal is the third error complained of.

The aforesaid Act of 24th February 1871, creates a registry department for the city, and requires books to be kept, wherein descrip-

[White *v.* Ballantine.]

tions of the real estate situated within the city limits shall be entered by the respective owners thereof. And furthermore requires purchasers who may acquire title to houses or lands in said city, after the passage of said act, to furnish to the officers in charge of said registry department a description of the real estate so acquired, &c. The eighth section is in the following words: "If neither the seller or buyer, devisee or heir, or other party, who has acquired a title to houses or lands in said city, nor the officers above named shall have furnished the description of the property, sold as aforesaid, both he who may have parted with, and he who acquired title, shall be liable for the taxes and assessments thereafter assessed thereon, without right or reclamation or contribution therefor either against the other; and if the lands or houses sold be afterwards sold for taxes or assessments thereafter accruing as a lien by record, before said duty shall have been performed, with the name of the former owner, the purchaser shall acquire the title of said owner, and all claiming under him; but if the said duty of making the return as required by this act shall have been discharged by the party who shall have acquired title in whatsoever manner before the tax accrued as a lien of record for which the same shall have been sold, the purchaser at a tax sale shall not acquire the title of such persons who shall have performed said duty, or of his heirs or assigns, unless the sale shall have been made in the name of such owner, after service of process upon him as in the case of suit by summons, scire facias, or other appropriate writ. Provided, however, that such owner shall repay to such purchaser within one year from date of deed, with ten per cent. added; such owners not complying with this provision shall have no right or title to such property, but the title shall remain good in the purchaser."

In view of this section, defendant's counsel requested the court to charge in their first point:—

"That it appearing in evidence in this case that the lots for which this ejectment was brought were not registered, as required by the Act of 24th February 1871, prior to the filing of the lien, and the entry of judgment thereon at No. 2, April Term 1874, and the legal title at that time was in N. Ballantine, the sheriff's sale thereon was effective to convey the title of the real owner, subject to redemption within one year by repayment of the purchase-money, and there being no evidence of such repayment, or offer to repay, the title of the purchaser became absolute, and their verdict should be for the defendant."

The court affirmed this point, and this is the fourth error assigned.

Touching this branch of the case, the plaintiff's counsel in their fourth point requested the court to charge: That under the record and deed in evidence, the provisions of the Act of 24th February 1871, relied upon by the defendant, do not apply, and

[White *v.* Ballantine.]

that the sheriff's deed, under which the defendant claims, does not confer upon or vest in him a valid title, and the plaintiff was therefore entitled to recover.

This instruction was refused, and the refusal thereof is alleged to be another and fifth error.

Defendant's counsel, in their third point, prayed further instruction: That under all the evidence in this case, the verdict should be for the defendant. This point was affirmed. The affirmance of this point is also alleged to be error.

Verdict for defendant, and after judgment, plaintiff took this writ and alleged that the court erred, as set forth in the above assignments of error.

*Weir & Gibson, Robert Robb* and *D. T. Watson*, for plaintiff in error.—We contend, 1. That in view of the evidence disclosing the nature and circumstances of White's ownership and his recovery of possession, he is not embraced within the provisions of the 8th section of the Act of 1871.

2. That if he is he was not bound to perform the duty imposed thereby until he recovered possession by virtue of a final judgment of the Supreme Court in his favor; that having obtained such judgment on the 9th of April 1875, and having afterwards, on the 26th of May 1875, filed a description of the property in the city registry as required, was a sufficient compliance with the law to preserve his title.

*T. C. Lazear* and *Slagle & Wiley*, for defendant in error.—It surely was not the intention of the Act of 1871 to change the law so far as it related to city assessments, and impose upon the city authorities the duty of amending the liens every time there might be a change in the title, even after judgment obtained or execution issued. This construction of the act would complicate the proceedings of the city rather than simplify, which was the evident intention of the act. But the meaning of the act is not doubtful. It requires the city officers to procure registry books; all owners of property to register their titles, and that all subsequent transfers be registered.

That the plaintiff is not saved by this act is perfectly clear. He acquired title by judgment of April 9th 1875. The lien was filed on record January 30th 1874, and judgment entered thereon July 8th 1874. The assessment therefore did not accrue after the acquisition of title. The only registry made by White was on the 26th day of May 1875, and therefore the duty of registering was not performed before the "tax accrued as a lien of record."

Mr. Justice GORDON delivered the opinion of the court, November 22d 1880.

[White v. Ballantine.]

The property in dispute was sold to James W. Ballantine, the defendant, on a levari facias issued on a judgment, obtained on a municipal claim for grading the street or streets adjacent to this property, which claim was filed January 30th 1874.  At that time Nathaniel Ballantine was in the possession of the property, and against him the scire facias was issued and judgment obtained.   It seems, however, as was afterwards determined by an action of ejectment, that the fee of the property was in E. C. White, the plaintiff, and that the possession of Ballantine was only that which he had acquired as White's mortgagee. · This then is a summary of the facts upon which.this case rests, and the question involved in, and arising from them is, what title did the defendant acquire by his purchase at the judicial sale ?   The plaintiff ·contends that inasmuch as the scire facias and judgment were in the name of Nathaniel Ballantine, the tenant of the property, the sale falls within the provisions of the Act of 6th January 1864, and passes to the · purchaser no more than Ballantine's title, whatever that may be. On the other hand, it is insisted by the defendant that he thereby acquired the entire title by virtue of the terms of the Act of 24th February 1871.   We think, then, that this contention must be determined by the construction put upon this last named act.   If this statute does not cover the case, then the hypothesis of the plaintiff must prevail, and, in that event, since there was no service of the scire facias upon White, the owner, the purchaser took nothing but Ballantine's interest.   The question thus presented is not a new one, and our task is rendered light by the opinion of our brother, Mr. Justice PAXSON, in the case of Emrick v. Dicken, filed on the 5th of January last, and reported in 11 Norris 76. The case here cited is full in point, for the claim filed, the scire facias and judgment, were against an " unknown owner," and though George Emrick, the owner, was without notice, and, at the time, resident upon the property, it was nevertheless held that the purchaser took a good title under the Act of 1871.   That was a case where the equities of the owner were much stronger than in the case in hand.   There, there was no notice to the owner ; here the assessment was against the plaintiff's mortgagee, and there is no pretence that he was without notice.   But even were he without notice, we cannot see any hardship in a law which makes the result complained of possible only through the negligence of the owner. Had the plaintiff complied with the requisitions of the statute, as in good faith he was bound to do, personal notice of the sci. fa. must have been given to him, or the sale under it would as to him have been worthless.   Who then was to blame if the plaintiff's property was assessed in a wrong name ?   Not the city officers, for there was no registration of the premises to which they could refer. They did what they could—what was proper under the circumstances—they assessed the property in the name of the person in

[White *v.* Ballantine.]

possession, and who at that time claimed to own it. And, indeed, if we should concede to the plaintiff what his counsel contends for, in his fourth point to the court below, that is, that he had no title when the assessment was made, then, of course, Nathaniel Ballantine was in fact the owner, and there can be no exception taken to that assessment on any ground. But as, even in the face of such an admission, we can scarcely suppose that it was intended thus to cut up the plaintiff's case by the roots, especially as the verdict in ejectment, rendered in December 1872, determined the case in White's favor, we prefer to rest the case on the Act of 1871.

This act was passed for the protection of these municipal claims. They are, as was said in the case above cited, a charge against the property alone, and the proceedings on them are not personal but *in rem.* Previously to the passage of the act above mentioned, if a property was assessed in a wrong name, and the owner could avoid notice, he wholly escaped from his legitimate share of public burden; his property was improved and enhanced in value at the expense of the city.

The Act of 1871 is, therefore, a valuable one, and should be enforced according to its intent and purpose. By it ample provision is made whereby the property owner may protect himself, and if he neglects to take care of his own interests he has no one to blame but himself.

Judgment affirmed.